JUSTICE NELSON
concurs.
¶25 I concur, for the most part, in the Court’s Opinion. I agree that there is no need to extend the ‘Shew with distrust” caselaw to the circumstances here. Indeed, as the Court itself recognizes, this line of cases was intended from the beginning to encourage law enforcement to memorialize (other than in their own minds) Miranda warnings/waivers and interrogations of suspects/witnesses where those occur in the controlled environment of the station house. Opinion, ¶¶ 11, 14, 15. The fact that the Legislature has effectively codified the requirement which we suggested years ago, if anything, confirms the wisdom of our decisions. See Opinion, ¶ 19.
¶26 It is also important to point out, that our ‘View with distrust” cases were never intended to apply (nor did they, in fact, apply) to the vast majority of police Miranda warnings/waivers and suspect/witness interrogations and interviews. Most of these are conducted by peace officers whose focus is on obtaining accurate, complete factual information-be it inculpatory or exculpatory-bo the end that the actually guilty person is held to account for his or her criminal conduct and can be fairly tried with all of the facts available to the prosecution, defense and fact-finder. As our cases demonstrate, however, there is the occasional peace officer who is not guided by these principles. And' in those instances, court involvement is necessary to protect the *10 accused’s constitutional rights and the integrity of the fact-gathering process. Quite simply, if a peace officer is not willing to memorialize his or her giving of Miranda warnings, a custodial interrogation, or the taking of a witness statement when he or she is in a controlled environment and has a recording device or paper and pencil available, then it is entirely appropriate to infer a purpose to subvert either the suspect’s constitutional rights or the fact-gathering process itself. As we stated in State v. Worrall, 1999 MT 55, 293 Mont. 439, 976 P.2d 968:
We doubt that there is a police station or sheriffs office in Montana that does not have paper and pens for note-taking and, more than likely, a typewriter for preparing statements, a tape recorder for recording those, and, in many cases, audio-visual recording equipment. Memorializing the reading of an accused’s rights, or an accused’s confession or, as in the case at bar, a citizen informant’s statement in the controlled environment of the station house, absent exigent circumstances, is neither an onerous nor a high-tech enterprise. Importantly, doing so avoids the sort of “who said what to whom” challenges that require trial courts to be arbiters of the credibility disputes that are nearly always resolved against the defendant. Indeed, we cannot envision any legitimate reason why the investigating officer would notin the ordinary case-memorialize in some fashion the taking of a witness’s or informant’s statement and, instead, choose to rely on his or her own memory of what was said, when the accuracy of those recollections might become critical weeks or months after the interview in proceedings implicating the fundamental rights of the defendant as well as the very ability of the state to successfully prosecute the case. No part of the criminal justice system, be it law enforcement, the prosecution, the defense, or the court, is well-served by this sort of slipshod approach.
Worrall, ¶ 53; see also United States v. Foster, 227 F.3d 1096, 1103 (9th Cir. 2000) (‘We are mindful that officers are in positions of strength and superior information when interacting with an accused and, therefore, that conversations occurring after a person invokes his or her Miranda rights must be viewed with suspicion and introduced at *11 trial only with the utmost caution.’0. These observations remain true.[1]
¶27 The ‘View with distrust” sanction was adopted as an evidentiary test for assessing credibility, not as a law enforcement protocol. Nor, importantly, was it adopted as a comment upon peace officers’ credibility generally. I believe that most peace officers will admit that there are a few bad apples in the law enforcement barrel-just as there are in every other profession. As in any profession, sanctions are adopted because of the misconduct of the few, not the many. And it follows that the majority of peace officers will never have to worry about our guideline. For the minority-few though they may be-it is appropriate that they do.
¶28 I concur.

 Indeed, as to confessions and admissions, the black-letter law itself supports our caselaw. The State has the burden of proving that a confession or admission is voluntary, §46-13-301(2), MCA, and if voluntariness is established as a matter of law, the circumstances surrounding the making of the confession or admission may be submitted to the jury as bearing on credibility or weight, §46-13- 301(3), MCA. It is questionable that any peace officer or prosecutor would choose to rely on mental recollections of an interrogation or interview months after the fact to establish the voluntariness of a confession or admission, when it was possible to simply memorialize the Miranda waiver and the incriminatory statements in the first place. It simply makes no sense to fight suppression battles that do not have to be fought.